makes sense to the next case is Bracey v. Superintendent Rockview SCI number 222766. We have two student advocates and it may make sense for the supervising attorney to introduce the students and then tell us how much time what they'll be arguing and then how much time they'd like to reserve and who will be doing the rebuttal. Adrian Rowe, please be here on behalf of the Kline School of Law at Duquesne University Federal Litigation Clinic. We have Daniel Kennedy, my voice is low and I think it works by not using the mic. May it please the court, Adrian Rowe for the Kline School of Law at Duquesne University Federal Litigation Clinic. And we have been given the great opportunity to have argument presented here today by two now former students, Daniel Kennedy and Ryan McCann. They have just graduated a few days ago and so now we have the argument and they are going to be Mr. Kennedy. We filed a notice to bifurcate and Mr. Kennedy will be addressing the first two Cox factors and Mr. McCann will be addressing the remaining three and I have a housekeeping detail that I'd like to bring up just in the interest of I don't know whether to do this before or after. Do you want to hear a housekeeping detail before argument or after? Does it involve allocation of time? No, it does not. Oh, OK. Well, it involves representation and we just wanted to bring to the attention of the court that at the conclusion of the argument without any comment on the merits of the case, we were proposing planning to file a motion to withdraw just to facilitate the orderly continuation of the case for Mr. Bracey. And he's consented to that and I understand that the government does not oppose and I just didn't want the panel to be surprised that there's some break in the representations, not that at all. Thanks for the preview. We'll take that motion up when it comes. How much time for, what's the proposal here? Because we typically only let one person do rebuttal. Who's going to handle rebuttal and how much time and where does that time come from? Mr. McCann is going to handle rebuttal. Excuse me, I misspoke. Mr. Kennedy is going to handle rebuttal and he was going to use two minutes. OK. All right. Very good. Thank you, Judge. Thank you. Good morning, Your Honors. May it please the court. My name is Daniel Kennedy on behalf of the appellant in today's matter, Mr. William Bracey. As Mr. Road has said, I will be discussing Cox factors one and two. So without further ado, the district court abused its discretion by requiring the change in law from Dennis itself to be extraordinary, as well as using a sufficiency of the evidence test to weigh Mr. Bracey's Brady claim against him, a misreading of both Cox and Brady. So in regards to the first Cox factor, it requires that the district court consider the effect of the change in decisional law on the district court's prior ruling, that prior ruling that denied Mr. Bracey his habeas relief in 2016. And he had been repeatedly denied since 2011 for untimeliness. The law of the land was that he had to find this Brady material on his own. What Dennis did in 2016, as I'm sure you're all aware, was it abolished that requirement. He had a year from when he was reasonably on notice that there was a Brady violation to then file his motion. And essentially what what happened was, you know, as this court recognized in Bracey's 2021 case versus Rockfield, that this this change carries a particular weight because of its constitutional nature. It has constitution. The district court recognized and acknowledged in its opinion. And I guess I'm just trying to understand what is the error here? Because while it said it's not extraordinary in and of itself, it assessed the rest of the Cox factors and viewed them cumulatively, which which would include its acknowledgment that Dennis did have impact in this case, as our previous ruling had shown. So what what tell me exactly what had the district court had to have said in addition when analyzing the first facts Cox factor? Yes, Your Honor. What the district court did, we believe that their language works against them essentially at the end of their first factor argument. They say that this change in law itself is not extraordinary. And, you know, using the language from this court later considers it cumulatively. So as what is it about what did it have? What additional words did it have to use to meet the standard, in your opinion? In our opinion, we believe that it should have examined more of the constitutional nature of it essentially regurgitated the material language and it compared it to Gonzalez, which we don't believe was an analogous case where in Gonzalez, the petitioner's only extraordinary sort of factor for relief was the change in law from the Arto's opinion from the Supreme Court. But here, Mr. Bracey has several factors for relief that are cumulatively in the full panoply of equitable circumstances under Cox way in favor of his relief, such as Cox factor two, his meritorious Brady claim. But it did consider Cox factor two. So I'm not understanding what at factor one was the mistake. Your Honor, we believe that at factor one, we believe that the court essentially considered all the factors in isolation and not cumulatively, essentially. OK, OK. Now, that sort of challenge, though, is reviewed for abuse of discretion, right? If we want to get into how you how a court weighs something, you know, that that's a tough one to say. You know, you gave factor one too little weight, too much weight. Usually what we do is we say, did you do an OK job with one? Did you do an OK job with two? As long as you've done adequate there, once once it gets to the relative weighing of factors, we're almost always just saying unless we see something really, really far out of bounds, you know, there's just no more guidance that the law is going to give. And we have to say it's just an abuse of discretion. And so I think what Judge Chung was saying is, is there is there just a problem with what was said at one? Is there a mistake of fact or a mistake of law at factor one? Because that's different than saying, hey, we don't like the weight that you gave factor one on the back end. So are you saying that there's a mistake of law or a mistake of fact at factor one? Are you just saying that, hey, on the back end, we wanted factor one to have a lot more weight than it actually had? I think what we're saying is that there was a mistake in law and that in our reading, it appeared that the district court required that change in law from Dennis itself to be extraordinary and almost every other factor to be extraordinary in order to have a cumulative extraordinary nature for all the factors. So, I mean, with Cox factor two, you know, OK, so so what you're saying is the court with the court's ruling indicates that the court thought in order for the first factor to weigh in favor of relief, it in and of itself had to be extraordinary. Yes, Your Honor. OK, sorry if that wasn't going on to your second point, the merits. It seems like your argument about Plummer is just counterfactual. You cited to J.A. 476 and 477, which it specifically says, you know, what's your plea to theft by receiving stolen property? Guilty. And then at 477, what's the sentence on theft by receiving fine of 50? No further sentence. I don't see anything to you cited these two pages and I don't see anything in these two pages that reflect a dismissal. Right. Sorry. So that that was a misstatement. It wasn't dismissed. He didn't disclose that he was pleading. That was part of the plea agreement. He would plead guilty to all those charges, including the receiving stolen property charge, in order to receive that four to 12 year sentence as part of the plea agreement. So that non-disclosure was an extra conviction, hiding a benefit. He was actually convicted. It'd be one thing if it were dismissed. But how is how is not disclosing a conviction, a benefit, an undisclosed benefit? We think it's an undisclosed benefit based on the language from a persuasive case, U.S. versus Smith from the D.C. Circuit from 1996, wherein that government's witness, they were heavily impeached at trial. The jury knew that there was going to be in exchange for his testimony, 10 charges would be dropped. But it wasn't described in exchange for his testimony. Yes. Right. That's a benefit. Having a charge dropped. Right. There was no charge dropped here. So how is that a benefit? It was all part of his plea agreement. They didn't essentially what the jury didn't get was the full picture of his his plea agreement here. And the same thing with Sylvester Bell. The jury didn't know that there was going to be two additional. But specific, what is the missing benefit that was not disclosed? That's what I'm trying to understand. How how is this a benefit that was not disclosed? The benefit was that Mr. Plummer essentially was able to testify to. He had a lengthy prison sentence that was on his plate and he was able to get away with a very favorable plea deal in exchange for his testimony. And that wasn't fully or properly disclosed to the jury at the time of trial. And without that, the jury wasn't apprised of the full picture of the nature of Plummer or Mr. Bell's plea agreements and Bracey's counsel's. You're right. They didn't get the full picture. But but both those witnesses were impeachable for basically the same reasons, for basically similar charges. And so we're going to say, hmm, no, you just didn't you just didn't tell him how many charges they were facing. I mean, the motive to get a better plea deal was still there. Right. Do I have that right in the record? That's one of the motives, Your Honor. But there's another dimension that we think they could have been impeached on. Essentially, there's some persuasive case law from the Ninth Circuit. It was U.S. versus Kellring from 2019, where it was a political corruption trial. They knew the jury knew that the government government witness was going to be testifying in exchange for a plea deal regarding his own corruption or bribery charges. I see my time is running. May I finish answering your question? And what they didn't know, though, was that he was also testifying in order to stop a it was a child pornography investigation into him. So that was basically these these extra charges were not going to be cumulative or not charges. But this this extra information were not going to be cumulative. It was another dimension to his testimony. So, for example, with Plummer Jr. receiving stolen property, that property was a nine millimeter firearm, the same caliber that was used to shoot Houston Sims the night of the murder. There was other information at play, such as the height of the shooter. His height was established to be 5'3 by Jacqueline Jackson. The shooter's height was established to be between 5'2 and 5'4 by Miligros Torres. Now, we think that all this could have been put in the jury's mind to have a reasonable probability that this trial or this trial's outcome could have been different had all this been disclosed. Thank you. So, you know, I just have one follow up question because because we haven't talked a ton. I think you were saying that you were going to speak to Cox Factor 2. Do I have that division of labor correct? Yes. Yeah. And I haven't heard a ton on that. I just want to sketch this out. It strikes me that Cox Factor 2 finality really cuts against you. I mean, and it just does, you know, like like we have we have state proceedings. We have state convictions. We have state PCRA actions, multiple of them. Then we have a federal thing. We have all of this finality. Now, there could be other scenarios where there's a lot less finality for Cox purposes. We might have a 2255 where you're challenging a federal conviction that went up on one direct appeal. We have a huge passage in terms of length of time. So I could imagine a situation where you would say, we're in a completely different situation. It's a 2255 coming from a federal court that went to direct appeal. The original conviction's three years old. We're here as fast as we could be. We aren't going to upset the apple cart too, too, too much. Here, like, you know, the factor is just, I think, finality. And there's so many decisions from so long, from so many different courts all reaching the same outcome. How in the world? I mean, don't you just want to say, yeah, that one cuts against us. But we went on some others and you got to balance it out. What what's your case that this this one could ever cut in your favor? That's a great question, Your Honor. Cox Factor 2 is about the merits of his underlying claim. My co-counsel, Mr. McCann, is covering Cox Factor 3, which is finality. So you count that as three. OK, I count that as two. OK. Oh, all right. That's coming your way. That's coming your way. All right. Why don't we hand it off? And you don't you don't have to lead with that. But but I want you I want you to address that at some point in time. Good morning, Your Honors. May it please the court. Ryan McCann on behalf of the appellant, Mr. William Bracey, as my co-counsel stated, I'll be covering Cox Factors three through five, considering the district court found that Cox Factor four weighed in favor of Mr. Bracey. And because that factor is not contested, unless this court has questions about Factor four, I'd like to address Cox Factor three and then skip to Cox Factor five. So Cox Factor three deals with the principles of finality and comity in addressing this factor. The district court failed to consider two limitations in its finality analysis. First, as recognized by the Supreme Court in Buck v. Davis, a state's interest in finality is accorded little weight when the underlying judgment was obtained on a flawed basis. So if the underlying judgment was obtained or resulted from a procedural failure or constitutional failure or newly discovered evidence that calls the validity of the underlying judgment into question, the state's interest in finality gives way to the public's greater interest. I mean, that just eviscerates the entire factor because everyone shows up with one of those type arguments. No one says I should win, but there's no constitutional mistake. No, there was no substantive error. I should still win. And there was even no procedural error. Everyone picks one of those to come here with. So so your challenge proves too much because that would just eviscerate the factor. As I read the factor, it's looking at how long and how many decisions cut in one direction. That's how I read it. That really. Who cares if they were 10, 10 or 50 or 100? But that's what the other factors are for. Yeah, that's what the other factors are for. Take that out in factor one. Take that out in factor two. I'm just curious. Why don't you just say we lose on factor? I guess you call this three. We lose on factor three. But look at look at look at how unjust it is elsewhere. I just don't know of a case where you can say there have been the case where factor three cuts in someone's favor is that twenty two fifty five scenario has come out with where there haven't been that many rulings when there haven't been that much passage of time. I just I just don't know, like it's not saying you can't win. Like Judge Ross says, you might be able to win if they're all unjust. But I don't know that you can win this factor if they're all unjust. What do you say to that? Well, you know, the Supreme Court has stated numerous times the whole purpose of a rule 66 motion is to make an exception to finality. And I think our case is a little bit different than, let's say, if the defendant was convicted in 1995 and there was case law from this circuit in 2016, like Dennis, that said what the law was in 1995 was wrong and the defendant filed his rule 66 motion. I think that would be a different case here. What we have is we have someone that was convicted and then for 16 years he's in prison without being aware that there are undisclosed brevity violations. He files his habeas petition in 2011. It's denied by then binding circuit precedent. It's not until five years later that he's able to relitigate his claim post Dennis. And then he's litigated his claim for five years after this court previously remanded the case back to the district court. And the district court has simply said, well, he was convicted in 1995. It's been almost 30 years and therefore finality weighs against him. When in reality, I think that interpretation is a little bit too broad. The district court didn't consider in its finality analysis the fact that he was unjustly incarcerated for 16 years. It didn't consider the fact that he was in prison for five years. And then that decision that kept his initial habeas petition and dismissal was later found to be flatly mistaken. And it also didn't account for the time that he was spent navigating his way through federal court. He got a remand from this court. The court found that the district court initially erred. Now, that litigation alone was five years and the district court just weighed all that time in favor of the Commonwealth. I think that alone is an error. Maybe to the merits. Sorry, I'll back up. Well, I'm just sort of following up. There are two strands that I'm hearing from me. One is a merits-based strand, which Judge Phipps has already pointed out is number two for you all, number one for him. But I'm hearing another strand, which is different, which is you consider what the procedural background is. And if a lot of that time can be sort of chalked up to challenges and procedures that involve the, let's say, meritorious change in case law, that being Dennis, then that reduces the interest in finality somewhat. And that also was an error. Correct. And I think that interpretation of the finality factor would be supported by the Supreme Court's language that the whole purpose of a Rule 60b-6 motion is to make an exception to finality. And I think that would also be supported by the Supreme Court's decision in Buck v. Davis, where the majority in that case kind of disregarded the fact that there was a lengthy period in time, eight years between the district court's dismissal of his initial habeas petition and the Supreme Court's ruling in Martinez. The Supreme Court didn't say, well, you know, there was eight years and, you know, therefore, he's not able to get any relief. It said that the underlying conviction was obtained on a flawed basis and therefore finality doesn't weigh in favor of the government. And that's what we have here today as well. I see my time has expired. If the court will entertain, I can address Cox 5 or I can sit back down as well. We can hear you very briefly. We'll give about 30 seconds on 5 to give a sketch and we'll see if anything comes out. Thank you, Your Honor. With Cox Factor 5, simply the district court just simply failed to address Cox Factor 5. It stated it on page 16 of its memorandum opinion in a rule statement. And then after finding that diligence weighed in favor of Mr. Bracey, just didn't address the factor, didn't provide any analysis. And I would suggest that that is contrary to this court's prior directive on remand in Bracey v. Superintendent Rockview, where the court remanded the case back to the district court to make the first pass at weighing the equitable factors as outlined in the opinion and any additional factors that the parties wish to brief. The court just simply did not address the factor at all. And under Bracey and Cox, that's per se abuse of discretion. Why would it consider that when it's not a capital case? I don't I wasn't under the impression that it needed to be a capital case in order for the court to address the factor. Simply, it's whether or not the petitioner could prove that he was unjustly incarcerated or if or not he was actually innocent. And based upon the allegations made in Mr. Bracey's petitions, I think he satisfies that colorable basis. Very much. Thank you, Your Honors. May it please the court. I am Christopher Schmidt from the Pennsylvania Office of Attorney General for the appellee. Bracey's. That cool neck tie you have on there. Thank you. I thought it was worthy of the third, sir. Bracey has not met his high bar of establishing that the district court abused its discretion by denying his request for extraordinary relief. I'd like to focus on Cox factor to the underlying merits of Bracey's Brady claim first. So Bracey makes two arguments in this regard. First, he contends that the district court applied the wrong legal standard. This argument fails. The district court applied the United States Supreme Court's decision in Kyle's for the principle that a reasonable probability of a different verdict occurs when there's undisclosed evidence that would undermine confidence in the verdict. The district court then announced more recent cases, including multiple cases from this circuit, that went further and just and provided specifically in Lesko just three years ago from this court that Brady materiality depends on almost entirely the value of the alleged Brady material versus the other evidence produced by the prosecution. And this court in Georgia and Johnson provided that suppressed evidence that would be cumulative of other evidence or which would be used to impeach testimony of a witness whose account is strongly corroborated is not Brady material. In fact, in Lesko, this court said that a somewhat more precise agreement revealed about the prosecution and a commonwealth witness has marginal value and generally doesn't undermine confidence in the verdict. The district court's. Which evidence was critical to a third degree conviction here? Does do Plummer or Bell provide any evidence that's critical to a third degree verdict? Because their argument seems to be materiality in the difference between a self-defense, the credible self-defense, third degree conviction, as opposed to what he was convicted of. So where is the critical evidence for that defense coming from in the record? So, for instance, if you entirely strike Bell and Plummer from the evidence. Is that how does that affect the jury's assessment of whether or not he acted in self-defense? If the jury did not consider Plummer Jr. and Bell and it's entirely there still would be there would still be confidence in the verdict for first degree murder or third degree murder. Torres and Jackson both saw Bracey commit the murder. Bracey admitted to the shooting contemporaneously with Jackson. And not only did Bracey admit that he did the shooting to Bell and Plummer Jr., but he also admitted that he committed the shooting to Plummer Sr. and to Jackson. And the physical and forensic evidence also confirms it. The injuries to Mr. Sims were all to the rear of his body, which corroborates the witness's testimony that he was shooting into the vehicle. Additionally, when police arrived on the scene, it was where the vehicle crashed two blocks away from the shooting scene. And the witnesses said the shooting scene occurred two blocks away. That's where the shell casings were found. So, again, that would corroborate the witness's testimony. And finally, the firearms expert testified that the shell casings all came from the same firearm. That corroborates one firearm, one shooter. And turning to the application of the materiality test, I think it is important initially to separate out Plummer Jr. and Bell. So Plummer Jr. told the jury that he faced six serious counts, including unlawfully carrying a firearm and aggravated assault. He also told the jury that he had three separate arrests for theft, robbery, and burglary. And he told the jury that he was going to enter a guilty plea, aggravated assault was going to be dismissed, and he was going to have a set term of incarceration. So the jury knew of a significant cooperation agreement, a significant criminal history. The only thing they didn't hear about was this relatively minor charge of theft by receiving stolen property, which did result in a $50 fine. So it wasn't dismissed. And also, the penalty is so minor that I don't think it's comprehensible to say the district court abused its discretion by saying that one charge, when the jury knew of essentially nine other charges, would have somehow tipped the scales in that regard. And again, looking at what Plummer Jr. told the jury, it's corroborated. He testified that he saw Bracey interacting with the driver and he heard gunshots. Torres and Jackson saw Bracey shooting at the car. Plummer Jr. testified that Bracey admitted to the shooting. Bracey admitted to the shooting to Bell, Plummer Sr., and Jackson. And again, the physical and forensic evidence corroborates the witness's accounts. Now, concerning Sylvester Bell, he told the jury that he was facing drug trafficking charges. He told the jury that he was going to enter a plea and receive a specific sentence. He didn't tell the jury that he had a second duplicative, cumulative set of drug trafficking charges. Now, I understand from their briefing initially that they're arguing that the dismissal of the second set of drug trafficking charges against Mr. Bell was part of Mr. Bell's original plea agreement. But as we've put forth in our brief, and I don't think they've responded to in their reply brief, the dismissal of the second set of drug trafficking charges bears all the hallmarks of after-the-fact consideration that the prosecution awarded to Mr. Bell after his testimony. When Mr. Bell entered his guilty plea to the first set of drug trafficking charges, about three weeks after his testimony, essentially nothing had been done to start the process of dismissing the second set of drug trafficking charges. But shouldn't the jury know that an additional benefit he could get is additional dismissals that, in effect, he's trying to sing for his supper? I mean, it would have been beneficial, and I think the district court recognized that, if the jury would have known about the second set of charges. But I don't believe the record supports the argument that the dismissal of the second set of charges was known at the time that Bell testified at trial. The record does not support that it was a known possibility at the time he testified? I mean, I guess any defendant who faces criminal charges has a possibility that charges could be dismissed. They could enter a guilty plea. They could go to trial. So I don't know that that really moves the ball forward for Mr. Bracey. And I think the key, again, is that we are left with this stipulated record below. And the prosecutor from Bracey's trial is still a prosecutor in central Pennsylvania. The prosecutor from Bell's trial is a recently retired prosecutor in central Pennsylvania. The elected district attorney at the time is an elected judge now, and the defense attorney for Bell's cases is still a defense attorney. If Mr. Bracey wanted to create a better record concerning the dismissal of the second set of charges, he could have called those witnesses. The district court scheduled an evidentiary hearing, but they went forth with the four corners of the stipulated record. And as we put forth, that all indicates that this is after-the-fact consideration, which this court in Lesko and a legion of other cases have found is not even Brady material. So I think when you look at everything cumulatively under Cox Factor II, again, returning to the abuse of discretion standard, the district court reviewed this  It reviewed the entire record. It applied the appropriate precedent. It used reason. It used logic. It didn't use an appropriate consideration. I think that's a lawful exercise of discretion. If I could turn to the first Cox Factor, I think this Cox Factor does have a benefit to Mr. Bracey, but it's a limited benefit. And the district court recognized this benefit. The benefit is it allows Mr. Bracey to get his foot in the district courthouse door in terms of overcoming the district court's prior determination that his most recent habeas petition was untimely filed. But just because a habeas petition is timely filed, that doesn't warrant relief. The petitioner necessarily has to show that he is entitled to relief on the grounds of the petition. And that's why I think the second Cox Factor is most important. And really, the district court did, if you think about it, what Mr. Bracey wanted. It reviewed the merits of his Brady claim. I think that his argument, his qualm is with how the district court exercised its discretion in reviewing that claim. And concerning my colleague's argument that the district court required that every Cox Factor be an extraordinary circumstance, I don't think that's supported by the district court's decision. I'm just looking at the very end of the decision before the conclusion. The court says the weight of all other factors is decidedly against the finding of extraordinary circumstances. And earlier in its discussion, the district court talks about a review of the totality of the circumstances. And really, while there are these factors, it is a totality of the circumstances test. These factors, I think, are just more of a guideline. I think that finality and comity definitely favor or the district court could find that it favored denying extraordinary relief because of how dated the conviction and judgment are and the fact that Bracey has never received relief on the claims. And I agree that their arguments about he should receive relief on the merits go to the other factors, not to finality and comity. Concerning the final factor, no unjust incarceration, I mean, I agree that I don't see anything in the district court's opinion specifically analyzing that factor. But I think when the district court does a very thoughtful, long analysis about the merits of the claim, that necessarily is a conclusion that the district court did not believe that Bracey is unjustly incarcerated. So I think that that analysis was still effectively done by the district court. I mean, that can be a problem with multi-factor tests. Sometimes the considerations that go into one factor overlap with the considerations that go into another factor. And so sometimes a court will give a lot of attention to one factor and then maybe just for not repeating itself, not say that when it does another factor. I think what you're saying is even if it didn't give express attention to factor, I think people are calling five, all the requisite analysis was done. That's your position? That's correct, Judge Phipps. I think if you look at the thorough analysis by the district court of the applicable standard for Brady materiality and Rule 60B-6 and all of its review of the entire record, it clearly was, it was explicitly making a determination that it didn't feel that Mr. Bracey was unjustly incarcerated. I think if the district court had found that there was a Brady violation, that necessarily would be a conclusion that Mr. Bracey was unjustly incarcerated. It simply didn't do that. And again, I think the district court was careful in indicating it is a totality of circumstances analysis. So the factors are a guide. I don't think it's a rigid requirement that each one has to be specifically articulated in a decision. So for all those reasons, we feel that the district court clearly used reason, it used logic, it applied the appropriate standards under Rule 60B-6 and the Brady standards, and therefore, we would respectfully request that this court affirm the denial of extraordinary relief. Thank you. Thank you very much. I think you have reserved two minutes of rebuttal. That's what you reserved. May I begin? Thank you. May it please the court. Just two points on rebuttal. First, when talking about the sort of whether or not removing the Plummer and Bell's testimony, whether that would have been enough to still convict, you know, what we're looking at is whether there is a reasonable probability this result would have been different. And under that U.S. versus Smith standard that I had cited earlier from that 96 DC Circuit case, it was enough that the witness in that case didn't reveal that he had two pending charges on top of the ten that were being dismissed. They found that that was a material Brady violation because he said he testified, I'm here to get a fresh start. That precluded the defendant's counsel from saying, are you really here to get a fresh start? Why are you lying about your plea agreement, et cetera? The same could have been done here. There's a couple of layers to impeachment here. And the first would be asking Bell and Plummer Jr. why they were leaving charges off of their plea agreements and what else they had to hide. Now, two other commonwealth witnesses testified at length to plea agreements, especially Plummer Sr., Plummer Jr.'s father, who said, I don't think my son is getting a good deal. Testified about his son's lawyers. Now, Bracey's counsel could have, again, had an extraordinary opportunity to cross examine Plummer Sr. and Jacqueline Jackson. That would be Sylvester Bell's girlfriend. But, you know, I mean, there's just so much other evidence, though. So so even if I mean, Judge Chung asked the question, just just just say that these guys got no credit, just say that just say that the impeachment was glorious. And people said it's like they were never even here. It's like the best impeachment we could ever imagine. You still need to show a reasonable probability of a different outcome with the remainder of the trial record. And that's a pretty strong trial record. What do you what do you say to that? I we don't we don't agree that it's a strong trial record from the transcript. I mean, Milly Rose Torres, the really you could say the only uninterested witness. She testified to her address as to what looks like it was three blocks down the street from the intersection of 18th and Regina Streets. And then she appeared through her. Is it an abuse just because you disagree with the district court? Is that an abuse of discretion? No. And I see my time is run. May I answer your question? Yeah, I see that. Sorry. The abuse of discretion came when the district court essentially didn't consider all the factors they used the wrong. They used the sufficiency of the evidence test. They said all this other evidence would have been enough to convict. And I know that that was the standard. That's what they said in Lesko. But Lesko, again, is a factually distinct case. And Lesko, the jury knew that Lesko had engaged in a multi-day killing spree. They knew Lesko himself had all this information in his possession regarding these, you know, the teenage witness, his medical file, et cetera. He had this information. Mr. Bracey was precluded from and his counsel was precluded from this information. And that's why we'd ask you today to either release or retry Mr. Bracey or if you're not inclined to do that, reverse. Thank you. Thank you very much. That's what we'll adjourn before we do. I'll just I'll just express my gratitude.